IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Forrest E. Crider, ) | |
| ) | Civil Action No.: 5:20-cv-02279-JMC |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER AND OPINION** |
| ) | |
| Pilgrim's Pride Corporation, Hog Slat ) | |
| Incorporated, AgFirst Farm Credit Bank, ) | |
| and AgSouth Farm Credit ACA, ) | |
| ) | |
| Defendants. ) | |

Currently before the court is Plaintiff Forrest E. Crider's Motion to Remand to State Court. (ECF No. 16.) Defendant AgFirst Farm Credit Bank's ("AgFirst") filed a Response in Opposition to the Motion (ECF No. 25), to which Plaintiff entered a Reply (ECF No. 26). For the following reasons, the court **GRANTS** Plaintiff's Motion to Remand and **REMANDS** this matter to the Calhoun County Court of Common Pleas.

**I.     RELEVANT FACTUAL AND PROCEDURAL BACKRGOUND[1]**

This case arises from the loss of Plaintiff's chicken farm. In 2007, Plaintiff built four poultry houses in which to raise chickens using a $1.2 million loan from AgSouth and AgFirst.[2] (ECF No. 20 at 4 ¶ 14.) Over a decade later in 2018, Pilgrim agreed to provide chickens for Plaintiff to raise so long as he "undertook various upgrade and repairs" to his farm. (*Id.* ¶ 17.) This agreement

---

[1] The following facts are taken from the Amended Complaint. (ECF No. 20.)
[2] While Plaintiff alleges both AgSouth and AgFirst were "engaged in the lending of money to Plaintiff for operation of his poultry farm," he also states that "AgFirst provides funding to nineteen (19) affiliated associations and other services to twenty (20) associations throughout eighteen (18) eastern states, including . . . AgSouth in South Carolina." (ECF No. 20 at 2, 4 ¶¶ 4-5, 16.)

1

included unspecified "oral agreements" as well as a letter of intent between Plaintiff and Pilgrim. (*Id.* at 4-5 ¶¶ 17-18.) "Plaintiff initially obtained [the] requisite financing" and completed Pilgrim's requested upgrades and repairs by hiring Hog Slat, a large contractor, to complete them. (*Id.* at 5 ¶¶ 18-24.) "AgFirst and AgSouth instructed Plaintiff to use . . . Hog Slat due to . . . Hog Slat's relationship with [Pilgrim]." (*Id.* ¶ 22.) Thereafter, "[t]he materials and equipment installed by . . . Hog Slat were installed improperly and failed," requiring Plaintiff to undertake additional repairs. (*Id.* ¶ 24.)  Pilgrim later requested various other repairs not specified in the letter of intent, and AgFirst and AgSouth refused to lend Plaintiff any further funds to complete them. (*Id.* at 5-6 ¶¶ 25-28.) Even so, "Plaintiff complied with the additional requirements imposed by [Pilgrim] and made all requisite repairs and upgrades." (*Id.* at 6 ¶ 27.) Despite Plaintiff's repairs, Pilgrim "subsequently communicated to Plaintiff that it would provide birds to Plaintiff's poultry farm only if the farm was owned by someone other than Plaintiff." (*Id.* ¶ 29.) "Aforesaid actions forced Plaintiff to sell his poultry farm, including four poultry houses and sixteen (16) acres of land that ha[d] been in Plaintiff's family for over two hundred (200) years." (*Id.* at 6-7 ¶ 30.)

Plaintiff later filed the instant action in state court against Defendants, bringing various claims related to the loss of his farm. (*Id.* at 7-14.) Relevant to the instant Motion, Plaintiff alleges that AgFirst and AgSouth tortiously interfered with his contract with Pilgrim by "intentionally and without justification" withholding the funds Plaintiff needed to repair his farm to Pilgrim's specifications and also requiring Plaintiff to use Hog Slat, which "negligently installed heaters and other equipment," leading to other repairs. (*Id.* at 9-10 ¶¶ 47-51.) Such actions allegedly proximately caused Pilgrim to breach its contract with Plaintiff. (*Id.*) Further, Plaintiff claims all Defendants "engaged in a civil conspiracy" to deprive Plaintiff of his chicken farm by requiring Plaintiff to undertake repairs yet declining to provide all the funding necessary to do so, thus

2

intentionally placing Plaintiff in a precarious financial position that ultimately "forc[ed] Plaintiff to include in the sale of his farm equipment and land not originally contemplated as collateral for his loan(s)." (*Id.* at 10-11 ¶¶ 52-29.) Lastly, Plaintiff claims Defendants' conduct was unfair and deceptive, is "capable of repetition," and proximately caused damage to Plaintiff. (*Id.* at 14-15 ¶¶ 64-71.)

Thereafter, AgSouth filed a notice of removal, and Plaintiff then filed the instant Motion to Remand. (ECF Nos. 1, 16.) As the basis for removal, Defendants AgSouth and AgFirst claim Plaintiff fraudulently joined AgFirst to this action to defeat diversity jurisdiction because both Plaintiff and AgFirst are residents of South Carolina. (ECF No. 20 at 1-2 ¶¶ 1, 4.)

## II.    LEGAL STANDARD

A party seeking to remove a case from state to federal court bears the burden of demonstrating that jurisdiction is proper at the time it files its petition for removal. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 73 (1996). If federal jurisdiction is doubtful, remand is necessary. *Mulchaey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); *see Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (noting Congress's "clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction"); *see also Auto Ins. Agency, Inc. v. Interstate Agency, Inc.,* 525 F. Supp. 1104, 1106 (D.S.C. 1981) (citations omitted).

The right to remove a case from state to federal court derives solely from 28 U.S.C. § 1441, which provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Absent jurisdiction based on the presentation of a federal question, *see* 28

U.S.C. § 1331 (2012), a federal district court only has "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a) (2012). "[28 U.S.C. § 1332(a)] and its predecessors have consistently been held to require complete diversity of citizenship. That is, diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original) (footnote omitted); *Crawford v. C. Richard Dobson Builders, Inc.*, 597 F. Supp. 2d 605, 608 (D.S.C. 2009) ("The complete diversity rule of § 1332 requires that the citizenship of each plaintiff be different from the citizenship of each defendant."). Moreover, a corporation is a "citizen" of the state in which it is incorporated. 28 U.S.C. § 1332(c)(1).

However, the fraudulent joinder doctrine "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999) (citing *Cobb v. Delta Exp. Inc.*, 186 F.3d 675, 677-78 (5th Cir. 1999)). To use this exception, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quoting *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993)). "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Hartley*, 187 F.3d at 424. The court may "look beyond the [Amended C]omplaint to determine the propriety of removal." *Flores v. Ethicon, Inc.*, 563 F. App'x 266, 269 (4th Cir. 2014).

The United States Court of Appeals for the Fourth Circuit has described the fraudulent joinder standard as "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley*, 187 F.3d at 424 (citation omitted). "There need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends." *Id.*

### III.    ANALYSIS

AgSouth and AgFirst contend removal was proper because Plaintiff fraudulently joined AgFirst to this case, as Plaintiff has no possibility of bringing a cognizable cause of action against AgFirst. (ECF No. 25 at 7.) Defendants insist the allegations within the Amended Complaint—specifically those concerning AgFirst's purported role in AgSouth's decisions to provide loans to Plaintiff—lack any factual basis. (*Id.* at 8.) As proof, AgSouth and AgFirst offer several documents attempting to demonstrate that AgSouth was Plaintiff's sole lender and AgFirst played no part in the decision-making surrounding Plaintiff's loans. (*Id.* at 8-11.)

Plaintiff counters that at this stage he simply needs to allege facts that "give rise to a possible cause of action[,]" which he has done. (ECF No. 16 at 7 (citation omitted).) Plaintiff observes that Defendants are attempting "to turn a jurisdictional question into a fact-finding trial" by providing certain documentary evidence, and notes such documents "fall short of . . . Defendants' burden to show that the resolution of factual questions in favor of Plaintiff provides no basis for recovery." (ECF No. 26 at 2.)

Here, the court finds this case must be remanded. Assuming Plaintiff's allegations outlined above and in the Amended Complaint are true, and resolving all factual and legal disputes in Plaintiff's favor, the court concludes Plaintiff could establish claims against AgFirst for Tortious Interference with Contract, Civil Conspiracy, and a violation of the Unfair Trade Practices Act.

AgFirst is thus properly joined to this action. *See Hartley*, 187 F.3d at 424 (fraudulent joinder standard is "even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that to survive a motion to dismiss, a plaintiff must only plead "enough facts to state a claim to relief that is plausible on its face").

Defendants seek to disprove the Amended Complaint's allegations with evidence supposedly demonstrating that AgFirst was uninvolved in AgSouth's decision-making process regarding Plaintiff's loans. For instance, Defendants offer several "[k]ey" loan-related documents involving Plaintiff and AgSouth that make no reference to AgFirst, including the Note Modification Agreement for Plaintiff's loan with AgSouth, a credit request from Plaintiff to AgSouth, a settlement statement for Plaintiff's loans with AgSouth, and a letter of understanding authorizing AgSouth to communicate with Pilgrim. (ECF Nos. 25-2, 25-4 through 25-8.) Yet even if these documents revealed that AgFirst was not directly responsible for loaning Plaintiff funds, such evidence does not conclusively determine that AgFirst played *no* role whatsoever in AgSouth's decision-making on whether to provide loans to Plaintiff.[3] (*See id.*) Further, affidavits from an AgFirst employee and an AgSouth employee disclaiming AgFirst's involvement do not irrefutably foreclose Plaintiff's claims against AgFirst, instead raising an issue of fact that may be resolved with further discovery. (*See* ECF Nos. 25-1, 25-3.) Defendants have thus not established that Plaintiff has no possibility of relief for his claims against AgFirst.

---

[3] The court further observes that AgFirst advertises "Loan Origination," "Loan Servicing," and numerous related services as part of the products and services it provides to customers such as AgSouth. *Products & Services*, https://www.agfirst.com/#products-and-services (last visited Jan. 18, 2021); *see also* FED. R. EVID. 201(b)(1)-(2) (stating the court may "take judicial notice on its own" of facts "not subject to reasonable dispute" because they are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

At this stage in the litigation and under the standard of fraudulent joinder, AgFirst is properly joined in this matter. *See Hartley*, 187 F.3d at 424 ("There need be only a slight possibility of a right to relief. Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends."). As it is undisputed that AgFirst and Crider are both citizens of South Carolina, the court must remand this matter for want of diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

### IV.     CONCLUSION

For the foregoing reasons, the court **GRANTS** Plaintiff's Motion to Remand. (ECF No. 16.) The district court clerk is hereby directed to send a certified copy of the Order to the Calhoun County Clerk of Court.

**IT IS SO ORDERED**.

*J. Michelle Childs*
United States District Judge

January 22, 2021
Columbia, South Carolina